## UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | | |
|---|---|---|
| COREY KELLER, individually, and as Special Administrator of the Estate of MELISSA KELLER, deceased, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | 13-03117 |
| THOMAS FINKS, individually and in his official capacity as CHRISTIAN COUNTY STATE'S ATTORNEY, CHRISTIAN COUNTY, CHRISTIAN COUNTY ADULT PROBATION DEPARTMENT, AMY CALVERT WINANS, individually and in her official capacity as CHRISTIAN COUNTY CORONER, | ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

## OPINION

**SUE E. MYERSCOUGH, U.S. District Judge:**

Defendants Thomas Finks, individually and in his official capacity as Christian County State's Attorney, Christian County, the Christian County Adult Probation Department, and Amy Calvert Winans, individually and in her official capacity as Christian County Coroner, have filed a Motion to Dismiss Plaintiff's Complaint

that is now before the Court (d/e 3). Defendants' Motion to Dismiss (d/e 3) is GRANTED. Plaintiff Corey Keller, individually, and as Special Administrator of the Estate of Melissa Keller, deceased, has failed to plead facts in Count I that Defendants Finks, Christian County, and the Christian County Probation Department violated Decedent Melissa Keller's constitutional rights. Additionally, after death, Decedent was no longer a person within our constitutional and statutory framework and, therefore, had no rights of which she may have been deprived. Based on this reasoning, Plaintiff cannot state claims for an alleged violation of Decedent's First and Fourth Amendment rights by Defendant Winans in Counts III and IV respectively. Accordingly, Plaintiff's claims in Counts I, III, and IV are DISMISSED without prejudice and with leave to replead. Because Plaintiff has not alleged claims for relief under federal law in the instant Complaint, the Court does not address Plaintiff's state law claims. See 28 U.S.C. § 1367(c)(3). Plaintiff may, however, replead his state law causes of action along with his constitutional claims.

# I.  BACKGROUND

The following facts are taken from Plaintiff's Complaint.  On April 27, 2012, Decedent was riding as a passenger in a vehicle operated by Katie McKenna.  (Compl. ¶¶ 8, 26.)  Before this date, Ms. McKenna had been under the supervision of Christian County and the Christian County Adult Probation Department.  (Id. ¶¶ 2, 20.)  While serving her term of probation, Ms. McKenna had violated the terms of her probation, resulting in a revocation.  (Id. ¶¶ 3, 22.)  Despite having had her term of probation revoked, however, Ms. McKenna was not in custody.  (Id. ¶¶ 3, 22.)

On the morning of April 27, 2012, Ms. McKenna was driving the vehicle in which Decedent rode at a rate of 70 miles per hour in a 10-miles-per-hour zone.  (Id. ¶¶ 9, 27.)  The vehicle struck a tree at this speed, tragically killing Decedent and two other passengers in the vehicle.  (Id. ¶¶ 2, 20.)  Following the accident, Defendant Amy Calvert Winans, the Christian County Coroner, drew Decedent's blood and performed an autopsy.  (Id. ¶¶ 10, 28.)

Following these events, Plaintiff Corey Keller, as special administrator of Decedent's estate, filed a five-count Complaint in this Court.  In Count I, Plaintiff brings claims against Christian

County, the Christian County Adult Probation Department, and the Christian County State's Attorney, Thomas Finks, in his official and individual capacities.  Plaintiff alleges in Count I that these Defendants' actions violated Decedent's constitutional rights by depriving her of life without due process of law, thereby subjecting the Defendants to liability under 42 U.S.C. § 1983.  Plaintiff also alleges that these Defendants are liable for their actions pursuant to the Illinois Wrongful Death Act.[1]

In Count II, Plaintiff brings claims against Christian County, the Christian County Adult Probation Department, and the Christian County State's Attorney, Thomas Finks, in his individual and official capacities.  Plaintiff alleges in Count II that these Defendants are liable under Illinois law for spoliation of evidence because the Defendants failed to preserve Ms. McKenna's probation file.

---

[1] The Court reads Count I to allege losses of "services, society, companionship, comfort, guidance, counsel, and advice, [and claims] for funeral and burial expenses, [and for] grief and sorrow" under the Illinois Wrongful Death Act alone, because such interests are not protectable under the Due Process Clause of the Fourteenth Amendment.

In Counts III and IV, Plaintiff brings claims against the Christian County Coroner, Amy Calvert Winans, in her individual and official capacities. Specifically, Plaintiff alleges in Count III that Defendant Winans is liable under § 1983 for violating Decedent's First Amendment rights. Plaintiff bases this claim on her allegation that the autopsy performed by Defendant Winans violated Decedent and her family's religious beliefs. In Count IV, Plaintiff alleges that Defendant Winans is also liable under § 1983 for violating Decedent's Fourth Amendment rights. Plaintiff's claim in Count IV is based on Plaintiff's allegation that the autopsy of and removal of blood from Decedent by Defendant Winans constituted an unreasonable search and seizure. Lastly, Plaintiff alleges in Count V that Defendant Winans battered Decedent. Plaintiff seeks compensatory and punitive damages. (Id. at 8.)

On May 30, 2013, Defendants filed a Motion to Dismiss Counts I through V of the Complaint.

## II.  JURISDICTION AND VENUE

The Court has subject-matter jurisdiction over Plaintiff's constitutional claims in Counts I, III, and IV. 28 U.S.C. § 1331.

The Court has supplemental jurisdiction over Plaintiff's state law claims in Counts I, II and V because those claims arise out of the same transaction or series of transactions as Plaintiff's constitutional claims. 28 U.S.C. § 1367. Venue is proper in this Court because the events or omissions giving rise to the claims at issue took place in this judicial district. 28 U.S.C. § 1391.

### III. <u>LEGAL STANDARD</u>

A motion under Rule 12(b)(6) challenges the sufficiency of the complaint. <u>Christensen v. Cnty. of Boone</u>, 483 F.3d 454, 458 (7th Cir. 2007). To state a claim for relief, a plaintiff's complaint need only provide a short and plain statement of the claim showing that the pleader is entitled to relief and giving the defendant fair notice of the claims. <u>Tamayo v. Blagojevich</u>, 526 F.3d 1074, 1081 (7th Cir. 2008). When considering a motion to dismiss under Rule 12(b)(6), the court construes the complaint in the light most favorable to the plaintiff, accepting all well-pleaded allegations as true and construing all reasonable inferences in the plaintiff's favor. <u>Id.</u> The complaint must set forth facts that plausibly demonstrate a claim for relief. <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 547 (2007).

Plausibility means alleging factual content that allows a court to reasonably infer that the defendant is liable for the misconduct alleged.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  Merely reciting the elements of a cause of action or supporting claims with conclusory statements is insufficient.  Id.

## IV.  ANALYSIS

In the Motion to Dismiss, Defendants argue that Plaintiff has failed to state claims for relief in Counts I through V of the Complaint.  Defendants seek an Order dismissing all five Counts of Plaintiff's Complaint.

## A.  Count I Against Defendant Finks in His Official Capacity and Individually Must Be Dismissed.

Plaintiff's Count I against Defendant Finks in his official capacity and individually must be dismissed.  When sued in his official capacity as State's Attorney for Christian County, Defendant Finks is merely the legal alter ego of the State of Illinois and, as such, enjoys sovereign immunity under the principles articulated in the United States Constitution's Eleventh Amendment.  In his individual capacity, Defendant Finks enjoys absolute prosecutorial immunity.

## 1. In His Official Capacity, Defendant State's Attorney Finks Is an Agent of the State of Illinois, Which Is Immune from Suit as a Sovereign State.

As an initial matter, claims against government officials in their official capacities are treated as claims against the government entities for which they serve as agents.  See Kentucky v. Graham, 473 U.S. 159, 169 (1985) ("[A] judgment against a public servant in his official capacity imposes liability on the entity that he represents." (citations omitted)); Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 n.55 (1978) ("[O]fficial-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent . . . ."); Richman v. Sheahan, 270 F.3d 430, 439 (7th Cir. 2001) ("[Plaintiff] sued [Defendant, an Illinois county sheriff,] in his official capacity, and therefore the claim is against the entity of which he is an agent.").  As a state's attorney, Defendant Finks is an agent of the State of Illinois when prosecuting criminal actions.  See Nat'l Cas. Co. v. McFatridge, 604 F.3d 335, 341–42 (7th Cir. 2010) ("[H]is primary duty is prosecuting criminal actions—a function he fulfills as a state employee.  The government of the county in which the state's attorney is elected has neither the power to direct, oversee nor control these

prosecutions; the state's attorney is not its employee." (citations omitted)); see also McGrath v. Gillis, 44 F.3d 567, 571 (7th Cir. 1995) (recognizing the Illinois Supreme Court's holding that Illinois state's attorneys are State employees with jurisdiction within their respective counties); Ingemunson v. Hedges, 549 N.E.2d 1269, 1272 (Ill. 1990) ("[D]rafters of our present constitution agreed . . . that state's attorneys should be classified as state, rather than county officers."). As such, when prosecuting criminal actions, a state's attorney is subject to liability in his official capacity only where the State of Illinois is subject to liability.

Principles of sovereign immunity, as articulated in part in the United States Constitution's Eleventh Amendment, sharply circumscribe States' vulnerability to suit. The Eleventh Amendment states: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. Moreover, the Eleventh Amendment has long been held to bar federal courts from exercising jurisdiction over actions brought against a State by its own citizens. Scott v. O'Grady, 975

F.2d 366, 369 (7th Cir. 1992). Suits at law against a State or its agencies by citizens of the State are therefore barred, save when the State consents to suit in federal court or Congress uses its power under the Fourteenth Amendment to abrogate the State's Eleventh Amendment immunity. Id. (citing Atascadero State Hosp. v. Scanlon, 473 U.S. 234, 238 (1985)). An exception to sovereign immunity is that an official-capacity suit in equity that seeks prospective injunctive relief from an unconstitutional state action may go forward. See id. (citing Ex parte Young, 209 U.S. 123, 159–60 (1908)).

In this case, Plaintiff seeks compensatory and punitive damages. Plaintiff does not allege that Congress has abrogated the State of Illinois's sovereign immunity in the context of the prosecution of States' criminal law, nor has the State of Illinois waived its immunity in this context. Thus, the sovereign immunity of the State of Illinois bars suit in this Court against the State, and, therefore, against Defendant Finks in his official capacity. Accordingly, Plaintiff's Count I against Finks in his official capacity must be dismissed.

## 2. In His Individual Capacity, Defendant State's Attorney Finks Enjoys Absolute Prosecutorial Immunity.

In his individual capacity, Defendant Finks enjoys prosecutorial immunity, and, therefore, Count I against him in his individual capacity must also be dismissed. The nature of an official's immunity turns on "the nature of the function performed, not the identity of the person who performed it." Kalina v. Fletcher, 522 U.S. 118, 127 (1997); Buckley v. Fitzsimmons, 509 U.S. 259, 269 (1993).

Prosecutors are absolutely immune from liability when acting as advocates for the State by engaging in conduct that is "intimately associated with the judicial phase of the criminal process." Imbler v. Pachtman, 424 U.S. 409, 430–31 (1976); Benson v. Safford, 13 Fed. App'x 405, 407 (7th Cir. 2001). Activities commonly associated with the judicial phase of the criminal process include deciding whether to prosecute, engaging in pretrial litigation, and plea bargaining. Prosecutors enjoy only qualified immunity in their investigative and administrative duties. Prosecutors' absolute immunity in the judicial phase applies even where they are alleged to have acted "with an improper state of mind or improper motive."

<u>Burns v. Reed</u>, 894 F.2d 949, 955 (7th Cir. 1990), <u>vacated in part</u>

<u>on other grounds and rev'd in part on other grounds</u>, 500 U.S. 478

(1991), <u>and</u> 958 F.2d 374 (7th Cir. 1992).

Here, Plaintiff alleges that Katie McKenna "was a repeat

offender," (Compl. ¶ 21), "had multiple cases filed against her," (<u>id.</u>),

"had . . . probation violations," (<u>id.</u>), "had been revoked prior to the

fatal accident that killed [Plaintiff's Decedent]," (<u>id.</u> ¶ 22), and "was

shielded from jail for whatever reason the defendants saw fit." (<u>Id.</u>

¶ 23.) Defendant Finks's alleged conduct comprises only these

activities, each of which is intimately associated with the judicial

phase of the criminal process against McKenna. As such, each of

Defendants' alleged activities is entitled to absolute immunity;

nowhere has Plaintiff alleged that Defendant Finks engaged in any

action entitled to qualified immunity only. That Plaintiff may hint

at Defendant Finks's allegedly improper motive, with the allegation

that McKenna "was shielded from jail for whatever reason the

defendants saw fit," does not change this conclusion. <u>See</u> <u>Burns</u>,

894 F.2d at 955 ("Whenever duties of a judicial nature are imposed

upon a public officer, the due execution of which depends upon his

judgment, <u>he is exempt from all responsibility by action for the</u>

<u>motives which influence him</u> and the manner in which said duties are performed." (emphasis added) (citation omitted))  Because Defendant Finks's actions as alleged in Plaintiff's complaint entitle Defendant Finks to absolute prosecutorial immunity, Count I against him in his personal capacity must be dismissed.

**B.    Count I Against Christian County and the Christian County Adult Probation Office Must Be Dismissed.**

Plaintiff's Count I against Christian County and the Christian County Adult Probation Office must also be dismissed because Plaintiff does not allege a custom, policy, or decision of a final municipal policy-maker that violates plaintiff's constitutional rights. <u>See</u> <u>Monell</u>, 436 U.S. at 694.

As discussed, as a state's attorney, Defendant Finks was an agent of the State of Illinois.  But even assuming for the sake of argument that he was an agent of Christian County, in this case Defendant Finks, when sued in his official capacity, serves merely as an alter ego for Christian County.[2]  (Defendant Christian County

---

[2] In fact, the status of municipal officials sued in their official capacity as mere alter egos of the municipalities they serve is so straightforward that some district courts have routinely dismissed official-capacity claims as redundant or duplicative.  <u>See, e.g.</u>, <u>Cotton v. District of Columbia</u>, 421 F. Supp. 2d 83, 86 (D.D.C.

Adult Probation Office is, similarly, Christian County's alter ego as an agency of the County.)  Accordingly, Defendant Finks is subject to suit in his official capacity only where Christian County and its agencies are subject to suit.

In general, municipal entities like Christian County can be subject to § 1983 liability, though not on the basis of respondeat superior liability.  Id. at 690, 694.  Rather, municipalities are subject to § 1983 liability when the violation of the plaintiff's federal right is caused by the enforcement of municipal policy, custom, or decision of a final municipal policy-maker.  Id. at 694.  The causal connection between the policy, custom, or decision and the violation of a plaintiff's federal right has been described as a "direct causal link," one that is "closely related."  City of Canton v. Harris, 489 U.S. 378, 385, 391 (1989).  In other words, the policy, custom, or decision must be the "moving force" behind the violation of the right.  Bd. of Cnty. Comm'rs v. Brown, 520 U.S. 397, 404 (1997).

Plaintiff in this case has failed to allege that any policy or custom of Christian County, either as exercised through its Adult

2006); Baines v. Masiello, 288 F. Supp. 2d 376, 384 (W.D.N.Y. 2003); McCachren v. Blacklick Valley Sch. Dist., 217 F. Supp. 2d 594, 599 (W.D. Pa. 2002).

Probation Office or as executed by Defendant Finks in his official capacity as Christian County State's Attorney, has deprived Plaintiff's Decedent of life without due process of law. Plaintiff's allegation that the driver in the car crash that killed Plaintiff's Decedent, Katie McKenna, "was shielded from jail for whatever reason the defendants saw fit," (Compl. ¶ 23), undermines the suggestion that a policy or custom of Christian County caused Plaintiff's Decedent's death.

At best, the allegation that McKenna was "shielded" for "whatever reason" amounts to an allegation that Defendants' discrete decision, rather than a policy or custom, resulted in McKenna's ongoing liberty. To be sure, municipal liability may be based on a single decision by a municipal official who has final policy-making authority. City of St. Louis v. Proprotnik, 485 U.S. 112, 123 (1988); Pembaur v. City of Cincinnati, 475 U.S.469, 480 (1986). And Defendant Finks, as Christian County State's Attorney, may have held some policy-making or discretionary authority to the extent that he is an official of Christian County. See McFatridge, 604 F.3d at 341–42 ("It is true . . . that the state's attorney can be characterized a county agent at various times."). But the mere fact

that a municipal official has discretionary authority is not sufficient to impose municipal liability. <u>Pembaur</u>, 475 U.S. at 481–82 ("The fact that a particular official—even a policymaking official—has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion."). Moreover, as discussed, Plaintiff's only allegations as to Defendant Finks's decisions as a county official with policy-making or discretionary authority pertain directly to Defendant Finks's prosecutorial duties, in which he is entitled to absolute immunity. Indeed, the fact that these allegations pertain only to Defendant Finks's actions pursuant to his prosecutorial duties substantially undercuts any suggestion that Defendant Finks was acting as a county official at all. <u>See</u> <u>McFatridge</u>, 604 F.3d at 342 (discussing the state's attorney's role as agent of the county when acting as the county's attorney in civil actions but as agent of the State when prosecuting criminal cases).

Finally, even if the events at the center of Plaintiff's claims were the result of a policy, custom, or decision of a duly authorized municipal officer, Plaintiff's allegations do not plausibly state that the policy, custom, or decision alleged was the "moving force"

behind Plaintiff's Decedent's death. To be sure, but for McKenna's liberty from imprisonment, she would not have driven the car that crashed and killed Plaintiff's Decedent. Even construing the allegations in the light most favorable to Plaintiff, however, the connection between the Defendants' decision permitting McKenna's liberty and Decedent's death is too attenuated to provide the necessary "direct causal link." Intervening causes, including McKenna's tortious (or even criminal) conduct and Plaintiff's Decedent's decision to ride in the car with McKenna, disrupt the direct causal link. Accordingly, because no policy, custom, or decision of a final municipal policy-maker of Christian County caused a violation of Plaintiff's Decedent's constitutional rights, Count I against Christian County and the Christian County Adult Probation Office must be dismissed.

**C.    Count III Against Defendant Winans Individually and in Her Official Capacity Must Be Dismissed.**

Count III against Defendant Winans individually and in her official capacity must be dismissed because Defendant Winans acted under the authority of a state statute that is valid under the

United States Constitution when she drew blood from and performed an autopsy on Plaintiff's Decedent.

Neutral laws of general application do not offend the First Amendment's Free Exercise Clause.  In <u>Employment Division, Department of Human Resources of Oregon v. Smith</u> in 1990, the Supreme Court held that neutral laws of general applicability do not violate the First Amendment's Free Exercise Clause simply because they burden religious practice.  494 U.S. 872, 878–79 (1990) ("[I]f prohibiting [or burdening] the exercise of religion . . . is not the object of [a law] but merely the incidental effect of a generally applicable and otherwise valid provision, the First Amendment has not been offended.  . . . [T]he right of free exercise does not relieve an individual of the obligation to comply with a valid and neutral law of general applicability on the ground that the law proscribes (or prescribes) conduct that his religion prescribes (or proscribes).")  Congress attempted to overrule <u>Smith</u> with the Religious Freedom Restoration Act of 1993 (RFRA, or "the Act"), which states that "laws 'neutral' toward religion may burden religious exercise as surely as laws intended to interfere with religious exercise" and that "the compelling interest test as set forth in prior Federal court rulings is

a workable test for striking sensible balances between religious liberty and competing prior governmental interests." 42 U.S.C. § 2000bb(a)(2), (5). The Act, thereby, required federal and state laws to further only compelling governmental interests by the least restrictive means, a standard often referred to as strict scrutiny.

RFRA was held unconstitutional as applied to the States, however, in City of Boerne v. Flores in 1997, because its application to state statutes exceeded Congress's authority under the Fourteenth Amendment. 521 U.S. 507, 536 (1997). Illinois has since passed its own Religious Freedom Restoration Act, 775 ILCS 35/1 et seq., subjecting state laws that burden religious exercise to strict scrutiny under the Illinois Constitution, but under the United States Constitution, the Free Exercise Clause requires only that state statutes be generally and neutrally applicable. See id. at 533–34; Smith, 494 U.S. at 878–79; River of Life Kingdom Ministries v. Vill. of Hazel Crest, 611 F.3d 367, 370 (7th Cir. 2010) (observing that "the clause of the First Amendment that guarantees the free exercise of religion does not excuse churches from having to comply with nondiscriminatory regulations, such as the prohibition of

drugs believed to be dangerous, even if the regulation interferes with church rituals or observances" and citing <u>Smith</u>).

In this case, Defendant Winans's authority as Christian County Coroner is provided by statute. 55 ILCS 5/3-3013, 3-3015. Section 3-3013 requires that a county coroner go as soon as she knows of a dead body lying within her county whose death is suspected of being a sudden or violent death, whether apparently suicidal, homicidal, or accidental, and take charge of that body to make a preliminary investigation into the circumstances of death. 55 ILCS 5/3-3013(a). Section 3-3013 invests county coroners with the discretion to attempt to ascertain the cause of death, either by autopsy or otherwise, and provides several more specific circumstances in which a county coroner may draw blood from a dead body. <u>Id.</u> Section 3-3015 also provides circumstances under which an autopsy is to be performed, including situations where a death has occurred under circumstances that are suspicious, obscure, mysterious, or otherwise unexplained and in the opinion of the coroner the cause of death cannot be established definitively except by autopsy. <u>Id.</u> § 3-3015. Section 3-3021 pronounces the public policy of the State of Illinois that a coroner shall release the

body of the decedent to the decedent's next of kin, and none of the coroner's duties or powers shall be construed to interfere with or control the right of the next of kin to the custody and burial of the decedent upon completion of the coroner's investigation.  Id. § 3-3021.

Altogether, the statutes that create county coroners' authority are general laws of neutral application, making no reference to religious practices or to any exception to be exercised by the decedent's next of kin.  A county coroner's authority is the same in all cases involving "violent death" and extends to the discretion to perform an autopsy or to draw blood.  Cf. § 3-3013.  In this case, Plaintiff's own Complaint establishes that Plaintiff's Decedent died in a car crash at a speed of 70 miles per hour in a 10-miles-per-hour zone, a tragically violent death.  An autopsy may also be performed at the discretion of the county coroner when the circumstances of death are suspicious; a 70-mile-per-hour, single-car crash in a 10-miles-per-hour zone is at least sufficiently out of the ordinary to raise suspicions.  Cf. § 3-3015.  Finally, Plaintiff does not allege that Defendant Winans exceeded her authority in her release of the body of Plaintiff's Decedent to Plaintiff upon

completion of the coroner's investigation.  Cf. § 3-3021.  Because

Defendant Winans's conduct in investigating the death of Plaintiff's

Decedent did not exceed her authority, as coroner of Christian

County, pursuant to a general law of neutral applicability,

Defendant Winans's conduct could not have violated the

constitutional rights of either Plaintiff himself or Plaintiff's Decedent

under the First Amendment's Free Exercise Clause.  Accordingly,

Count III must be dismissed.

### D. Count IV Against Defendant Winans Individually and in Her Official Capacity Must Be Dismissed.

Count IV against Defendant Winans individually and in her

official capacity must be dismissed because Plaintiff's Decedent's

rights under the Fourth Amendment do not survive Plaintiff's

Decedent's death, and even if those rights did survive, Plaintiff

cannot assert those rights on the Decedent's behalf.

To begin with, a deceased person has no rights within our

constitutional scheme.  The common law and the statutes of the

State of Illinois have long recognized the authority of an estate's

administrator or executor to stand in the shoes of a decedent in

order to pursue suits for wrongful death under circumstances

where decedent herself would have had a cause of action in tort if not for her death.  See, e.g., the Illinois Wrongful Death Act, 740 ILCS 180/1 et seq.  But once dead, Plaintiff's Decedent did not have a right to be free from search or seizure.  To be sure, through criminal prohibition, the Illinois Compiled Statutes protect against the dismemberment of human bodies, 720 ILCS 5/12-20.5, and the abuse of corpses, 720 ILCS 5/12-20.6.  No statute, however, creates a private right of action against those who commit these criminal acts.  Moreover, persons employed by a county coroner's office enjoy exemptions from criminal liability under both the dismemberment statute, see 720 ILCS 5/12-20.5(b)(4), and the abuse of a corpse statute.  See 720 ILCS 5/12-20.6(d)(1).  Thus, there was no right which Plaintiff could assert on Plaintiff's Decedent's behalf.  Accordingly, Plaintiff cannot bring a claim on behalf of Plaintiff's Decedent premised on Defendant Winans's purported violation of Decedent's Fourth Amendment right to be free from illegal search or seizure.

Furthermore, even if Plaintiff's Decedent did maintain some federal right against unreasonable search or seizure after death, Plaintiff does not have standing to assert the right on her behalf.

Prudential doctrines of standing typically bar third-party standing and require individuals to seek to vindicate their own rights.  See Singleton v. Wulff, 428 U.S. 106, 113–14 (1976).  Exceptions to the rule against third-party standing arise in circumstances where the rights of the litigant before the court and the right of the third-party are closely related, see, e.g., Griswold v. Connecticut, 381 U.S. 479 (1965) (permitting licensed physician to assert the privacy rights of the married persons whom they advised on reproductive health and contraception), or where an obstacle prevents the third party from asserting her own claim.  See NAACP v. Alabama, 357 U.S. 449 (1958) (permitting National Association for Advancement of Colored People to assert its members right to anonymous membership to prevent destruction of the right in its assertion).  The rule against third-party standing is especially strong in the context of the Fourth Amendment.  See United States v. Salvucci, 448 U.S. 83, 86–87 (1980) ("It is entirely proper to require of one who seeks to challenge the legality of a search . . . that he establish that he himself was the victim of an invasion of privacy.  Subsequent attempts to vicariously assert violations of the Fourth Amendment rights of

others have been repeatedly rejected by this Court." (citations omitted)).

In this case, even if Plaintiff's Decedent maintained some Fourth Amendment right to be free from unreasonable searches or seizures even after death, Plaintiff cannot assert those rights on Decedent's behalf because Plaintiff's own rights were not closely related. Moreover, the rule against third-party standing in the context of the Fourth Amendment bars Plaintiff's claim. Accordingly, Count IV must be dismissed.

## E. The Court Declines to Exercise Supplemental Jurisdiction Over Plaintiff's Remaining State Law Claims.

The Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims. In any civil action in which a district court has original jurisdiction, the district court also has supplemental jurisdiction over all other claims so related to the claims in the action within original jurisdiction that they form the same case or controversy under Article III of the United States Constitution. 28 U.S.C. § 1367(a). A district court has discretion to decline supplemental jurisdiction, however, if no claim remains over which it has original jurisdiction. Id. § 1367(c)(3). In the Seventh

Circuit, a district court should relinquish supplemental jurisdiction over state law claims unless: "(1) the state law claims may not be re-filed because a statute of limitations has expired, (2) substantial judicial resources have been expended on the state law claims, or (3) it is clearly apparent how the state law claims are to be decided." Dargis v. Sheahan, 526 F.3d 981, 990 (7th Cir. 2008).

First, the statutes of limitations on Plaintiff's claims had not run at the time of first filing, and a proper amended claim in this Court will relate back to the date of first filing for purposes of complying with those statutes of limitations. Moreover, the running of the statutes of limitations on any of the claims would not bar Plaintiff from filing suit in state court instead because state law gives plaintiffs one year to file their claims in state court after dismissal by a federal court. See 735 ILCS 5/13-217 ("In the actions specified in . . . any other act . . . where the time for commencing an action is limited, if . . . the action is dismissed by a United States District Court . . . then, whether or not the time limitation for bringing such action expires during the pendency of such action, the plaintiff . . . may commence a new action within one year or within the remaining period of limitation, whichever is

greater, after . . . the action is dismissed by [the United States District Court] . . . .").  Second, this Court has not expended substantial judicial resources to resolve Plaintiff's state law claims because this Court has not addressed those claims thus far in the litigation.  Third, the resolution of the state law claims is not clearly apparent, but Plaintiff may replead related state law claims along with his constitutional claims.  For these reasons, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims at this time.

## V.    CONCLUSION

**For the reasons stated, Defendants' Motion to Dismiss (d/e 3) is GRANTED.  Plaintiff's claims in Counts I, III, and IV are DISMISSED without prejudice and with leave to replead.  The Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims.  Plaintiff may replead his state law causes of action along with his constitutional claims.  IT IS SO ORDERED.**

ENTER:  March 31, 2014

FOR THE COURT:                              s/ Sue E. Myerscough
                                                    SUE E. MYERSCOUGH
                                            UNITED STATES DISTRICT JUDGE